Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2023 08:05 AM CDT

Stacy Ryan et al., appellees, v. Steven Ryan,
in his individual capacity and as Personal
Representative of the Estate of Dr. Wayne
L. Ryan, deceased, et al., appellees,
and Constance Ryan, appellant.

___ N.W.2d ___

Filed April 7, 2023.    No. S-22-191.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
2. **Final Orders: Appeal and Error.** A trial court's decision to certify a final judgment pursuant to Neb. Rev. Stat. § 25-1315(1) (Reissue 2016) is reviewed for an abuse of discretion, but whether § 25-1315 is implicated in a case is a question of law which an appellate court considers de novo.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue.
4. **Final Orders: Appeal and Error.** To be appealable, an order must satisfy the final order requirements of Neb. Rev. Stat. § 25-1902 (Reissue 2016) and, where implicated, Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).
5. **Trusts: Final Orders.** As a judicial proceeding under the Nebraska Uniform Trust Code, a trust contest under the authority of Neb. Rev. Stat. § 30-3856 (Reissue 2016) is considered a special proceeding for purposes of Neb. Rev. Stat. § 25-1902 (Reissue 2016).
6. **Actions: Final Orders.** Neb. Rev. Stat. § 25-1315 (Reissue 2016) can be implicated in civil actions, in special proceedings, and in civil actions joined with special proceedings.
7. **Courts: Judgments.** When a trial court concludes entry of judgment under Neb. Rev. Stat. § 25-1315(1) (Reissue 2016) is appropriate,

it should ordinarily make specific findings setting forth the reasons for its order.

8. **Courts: Judgments: Appeal and Error.** A trial court considering certification of a final judgment under Neb. Rev. Stat. § 25-1315 (Reissue 2016) should weigh factors such as (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. As a starting point for considering certification of a final judgment, it is appropriate for the trial court to consider whether the claims under review for potential certification are separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals.

9. **Claims: Parties: Judgments: Final Orders: Appeal and Error.** Certification of a final judgment must be reserved for the "unusual case" in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by the pressing needs of the litigants for an early and separate judgment as to some claims or parties. The power Neb. Rev. Stat. § 25-1315(1) (Reissue 2016) confers upon the trial judge should be used only in the "infrequent harsh case" as an instrument for the improved administration of justice, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case. A court should be particularly cautious in certifying as final a judgment on a claim which is not truly distinct from the claims on remaining issues, for even if the certified judgment is inherently final, the facts underlying the claim resulting in that judgment may be intertwined with the remaining issues.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Order vacated, and appeal dismissed.

Daniel J. Welch and Damien J. Wright, of Welch Law Firm, P.C., for appellant.

Marnie A. Jensen, David A. Lopez, and Kamron T.M. Hasan, of Husch Blackwell, L.L.P., and John A. Svoboda, of Dvorak Law Group, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, and Freudenberg, JJ., and Kube, District Judge.

Miller-Lerman, J.
## NATURE OF CASE
Constance Ryan appeals the order of the district court for Douglas County which, pursuant to Neb. Rev. Stat. § 25-1315 (Reissue 2016), certified that a certain prior order was a final judgment as to defendants other than Constance. Constance claims, inter alia, that the court erred when it certified the order as a final judgment. We conclude that the certification was an abuse of discretion, and we therefore vacate the certification order and dismiss the appeal for lack of jurisdiction.

## STATEMENT OF FACTS
The present case arose in the context of estate planning carried out by Dr. Wayne L. Ryan and his wife, Eileen Ryan. The parties involved in this case include, inter alia, their five children—Constance Ryan, Carol Ryan, Stacy Ryan, Timothy Ryan, and Steven Ryan. As part of the estate planning, Wayne created the Wayne L. Ryan Revocable Trust (the Trust). The issues in this case generally revolve around the validity of amendments that Wayne made to the Trust in 2013, 2014, and 2015, after Eileen's death in March 2013.

The original complaint in this case was filed in the district court on March 31, 2017, by Stacy and Stacy's three sons. Although Stacy's sons are named plaintiffs in this case, hereinafter, we generally refer to the plaintiffs collectively as "Stacy." Defendants named by Stacy included, inter alia, Wayne, Constance, Carol, Timothy, and Steven in their individual capacities; Carol was also named as a defendant in her capacity as trustee of the Trust. Other defendants named in the original complaint were dismissed from the action prior

to the time of the orders that are at issue in this appeal. Generally, Stacy alleged that amendments Wayne made to the Trust after Eileen's death had the effect of making The Ryan Foundation, a nonprofit corporation founded by Wayne and Eileen, the sole beneficiary of the Trust. Stacy alleged that such amendments violated a postnuptial agreement between Wayne and Eileen that established the Trust was to benefit their children and grandchildren, as well as The Ryan Foundation. Stacy generally alleged that her father, Wayne; her siblings, Constance, Carol, Timothy, and Steven; and other defendants had taken actions that excluded her from the benefits of the Trust.

Stacy set forth 10 causes of action in the original complaint. Stacy provided a caption for each cause of action that described the nature of the claim and that specified the defendant or defendants against whom the claim was directed. The causes of action included various tort claims and breach of contract claims, some of which were directed solely at Wayne and some of which were directed at varying combinations of Wayne; the siblings, including Constance, in their individual capacities; Carol, in her capacity as trustee; and other defendants. Stacy also included a cause of action for declaratory judgment that was not designated as being directed at any specific defendant or defendants.

Wayne died on November 3, 2017. The district court thereafter granted Stacy leave to amend her complaint. Stacy filed her first amended complaint on January 22, 2018. Stacy revised the named defendants to reflect that, in addition to being a defendant in his individual capacity, Steven was a defendant in his capacity as personal representative of Wayne's estate, and to reflect that Carol was no longer trustee of the Trust and that instead, Steven and First Nebraska Trust Company were cotrustees of the Trust. In the first amended complaint, Stacy generally repeated causes of action she had set forth in the original complaint, with changes to reflect the new designation of defendants. The first amended complaint

included nine causes of action; it did not include a cause of action from the original complaint that was directed solely at a defendant who was no longer named in the case.

The nine causes of action set forth by Stacy in the first amended complaint were as follows: (1) civil forgery (against Wayne's estate and Stacy's siblings); (2) undue influence (against Wayne's estate and Stacy's siblings); (3) declaratory judgment (no defendant or defendants specified); (4) breach of covenant of good faith and fair dealing (against Wayne's estate); (5) constructive fraud (against Wayne's estate and Stacy's siblings); (6) intentional interference with contractual relations (against Stacy's siblings); (7) unjust enrichment (against Wayne's estate and the cotrustees of the Trust); (8) promissory estoppel (against Wayne's estate); and (9) breach of contract (against Wayne's estate). Certain causes of action were also directed against two other defendants who Stacy later dismissed from the case. In the cause of action for declaratory judgment, which was not designated as being directed against any specific defendant or defendants, Stacy sought a declaration that amendments Wayne made to the Trust following Eileen's death were invalid and that the operative terms of the Trust were those in effect prior to such amendments.

Stacy was later given leave to file a second amended complaint, which she filed on August 14, 2019. In the second amended complaint, Stacy repeated the nine causes of action that she had set forth in the first amended complaint, although she denominated them as "counts" rather than as "causes of action." Stacy added three "counts" in which she contested the validity of the amendments Wayne had made to the Trust. She alleged that the district court had jurisdiction over these additional counts pursuant to Neb. Rev. Stat. § 24-517(8) (Cum. Supp. 2022), which provides that county courts have "[c]oncurrent original jurisdiction with the district court in matters arising under the Nebraska Uniform Trust Code." Stacy also alleged that she had timely filed the trust contest under the authority of Neb. Rev. Stat. § 30-3856 (Reissue

2016), which is part of the Nebraska Uniform Trust Code (NUTC) and which provides that "[a] person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death . . . ."

In the captions for the three new counts that formed the trust contest, Stacy did not identify the defendant or defendants against whom the counts were directed. In the first new "count," Stacy alleged that Wayne lacked testamentary capacity when he made a restatement and amendments to the Trust in 2013, 2014, and 2015. In the second new "count," Stacy alleged that Wayne was unduly influenced by Steven and Carol to make the restatement and amendments to the Trust in 2013, 2014, and 2015. In the third and final new "count," Stacy alleged that the signatures purported to be Wayne's signatures on the restatement and amendments to the Trust in 2013, 2014, and 2015 were forgeries. Stacy sought a declaratory judgment that as a result of the alleged lack of testamentary capacity, undue influence, and forgeries, the restatement and amendments to the Trust in 2013, 2014, and 2015 were not valid and should not be given effect and that instead, a restated trust agreement from 2007 was the valid and effective instrument governing the Trust.

Constance, separately from the other defendants, filed an answer to Stacy's second amended complaint in which she admitted some of Stacy's allegations and denied others. Although she did not set forth an explicit counterclaim or cross-claim, Constance "affirmatively aver[red] that some or all of the changes to [Wayne's] estate plan occurring after the death of Eileen . . . were the result of either [Wayne's] lack of testamentary capacity or the undue influence of Steven . . . , Carol . . . , and/or Timothy." Constance concluded her answer by requesting, inter alia, dismissal of Stacy's claims for money damages against her and a determination of the operative trust instrument for the Trust.

Carol, Timothy, and Steven, in his individual capacity and as personal representative of Wayne's estate and as cotrustee

of the Trust with First Nebraska Trust Company (hereinafter referred to collectively as "the Ryan Defendants"), filed an answer to Stacy's second amended complaint. The Ryan Defendants admitted certain allegations but generally denied Stacy's remaining allegations. They also set forth various affirmative defenses.

This case proceeded with further motions and orders, which included Stacy's voluntary dismissal of all defendants other than the Ryan Defendants and Constance. Stacy also voluntarily dismissed three counts set forth in the second amended complaint—undue influence (against Wayne's estate and Stacy's siblings), breach of covenant of good faith and fair dealing (against Wayne's estate), and constructive fraud (against Wayne's estate and Stacy's siblings).

The district court eventually ordered the remaining parties into mediation to resolve the issues in this case. As a result of the mediation, Stacy and the Ryan Defendants reached a settlement agreement, and in October 2021, they filed a stipulated motion for the court to approve their settlement agreement and to dismiss the Ryan Defendants and Stacy's claims against them with prejudice.

Around the time that Stacy and the Ryan Defendants filed their stipulated motion, Constance filed two motions in the district court. On October 5, 2021, Constance filed a "Motion to Realign Parties and Amend Pleading" in which she moved for an order realigning her as a plaintiff and allowing her leave to file an amended pleading. Constance alleged that she contested the validity of the changes Wayne made to the Trust, whereas the Ryan Defendants were proponents of those changes.

On October 7, 2021, Constance filed a "Motion for Review of Settlement Agreement," in which she requested review of the settlement agreement between Stacy and the Ryan Defendants pursuant to Neb. Rev. Stat. § 30-3811 (Reissue 2016). Section 30-3811(c) provides that "[a] nonjudicial settlement agreement is valid only to the extent it does not

violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under [the NUTC] or other applicable law," and § 30-3811(e) provides that "[a]ny interested person may request the court to approve a nonjudicial settlement agreement, to determine whether the representation as provided in [other statutes in the NUTC] was adequate, and to determine whether the agreement contains terms and conditions the court could have properly approved." Constance alleged that the settlement agreement between Stacy and the Ryan Defendants would require the Trust to make distributions to Stacy; Constance further alleged that such distributions were not authorized under the terms of the Trust and would require modification of the Trust terms, which modification could not be approved without consent of all beneficiaries or a determination that the interests of non-consenting beneficiaries were adequately protected. Constance requested that the court order production of the settlement agreement and determine whether it included terms that the court could properly approve. In an order filed November 24, the court overruled both of Constance's motions.

On February 8, 2022, the district court filed under seal an order in which it granted the stipulated motion filed by Stacy and the Ryan Defendants to approve their settlement agreement and to dismiss with prejudice. With regard to approval of the settlement agreement, the court found, inter alia, that the settlement agreement was not ambiguous, that it was enforceable in all respects, and that it complied with Nebraska law. The court therefore approved the settlement agreement. With regard to dismissal, the court found that Stacy and the Ryan Defendants "agreed to voluntarily dismiss, with prejudice, all claims, defenses or other requests for damages, costs, or fees that have been or could have been brought against one another in this lawsuit." The court therefore dismissed "all such claims, defenses or other requests" with prejudice. The court specifically found that the only claims for relief against the Ryan Defendants in any operative pleadings were those

set forth in Stacy's second amended complaint. The court found that no claims or requests for relief remained against the Ryan Defendants, and it therefore dismissed the Ryan Defendants from the case.

On February 23, 2022, the district court filed a "Final Judgment" which stated that in the February 8 order it had granted the stipulated motion of Stacy and the Ryan Defendants for dismissal, thereby terminating all claims in this case against the Ryan Defendants. The court further found that Stacy had not dismissed her claims against Constance. The court therefore certified that "entry of this Final Judgment pursuant to . . . § 25-1315 is appropriate." The court entered a final judgment and stated that (1) Stacy was the only party who brought any claim, counterclaim, cross-claim, or third party claim in this matter; (2) Stacy brought her claims against multiple defendants; (3) the Ryan Defendants had been dismissed from the case with prejudice; and (4) Stacy had not dismissed Constance as a defendant in the action and that Stacy had asserted and maintained claims against Constance. The court "expressly [found] that there is no just reason for delay and that any rights and/ or liabilities related to [the Ryan Defendants] are terminated effective as of the date of entry of this Final Judgment and that the Final Judgment is enforceable as of the same date." In this certification order, the court stated that "[t]o remove any doubt and bring finality as to [the Ryan Defendants'] status" in this case, it was directing final judgment as to the Ryan Defendants pursuant to § 25-1315.

Constance appeals the February 23, 2022, order.

## ASSIGNMENTS OF ERROR

Constance claims that the district court erred when it certified a final judgment as to the Ryan Defendants under the certification statute, § 25-1315. She also claims that the court erred when it overruled her motion to review the settlement agreement pursuant to § 30-3811 and when it instead approved the settlement agreement "under some other unidentified" authority. Brief for appellant at 30.

## STANDARDS OF REVIEW

[1,2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Mann v. Mann*, 312 Neb. 275, 978 N.W.2d 606 (2022). A trial court's decision to certify a final judgment pursuant to § 25-1315(1) is reviewed for an abuse of discretion, but whether § 25-1315 is implicated in a case is a question of law which an appellate court considers de novo. *Mann v. Mann, supra*.

## ANALYSIS

*We Must Determine Whether Certification*
*Was Appropriate and Whether We Have*
*Jurisdiction Over This Appeal.*

[3,4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue. *In re Interest of K.C., ante* p. 385, 984 N.W.2d 277 (2023). To be appealable, an order must satisfy the final order requirements of Neb. Rev. Stat. § 25-1902 (Reissue 2016) and, where implicated, § 25-1315(1). *Mann v. Mann, supra*.

Prior to this appeal being moved to this court's docket, the Nebraska Court of Appeals performed a jurisdictional review and identified an issue regarding the propriety of the district court's certification of a final judgment. The Court of Appeals filed a minute entry on April 28, 2022, in which it stated that in the February 23 order, the district court "merely invoked the language of § 25-1315(1) that there is no just reason for delay, but made no specific findings in support of its § 25-1315(1) determination." The Court of Appeals directed the parties to address the jurisdictional issue in their briefs.

In her brief for appellant, Constance responded to the Court of Appeals' minute entry by assigning error to the district court's certification of final judgment as to the Ryan Defendants. In their brief for appellees, the Ryan Defendants argued that

the certification was proper, but they further argued that we lack jurisdiction over Constance's appeal for other reasons.

Because the certification issue implicates our appellate jurisdiction, we consider that issue before addressing Constance's other assignments of error. As set forth below, we determine that the certification was not appropriate, and because we lack jurisdiction for that reason, we do not further address Constance's other assignments of error or the Ryan Defendants' argument that Constance could not appeal the district court's orders.

*Section 25-1315 Applies in This Case Which*
*Combined a Special Proceeding With a Civil*
*Action and Involved Multiple Parties.*

We must first determine whether § 25-1315 applies in this case. As a general matter, a certification order under § 25-1315 permits an appeal where one would not ordinarily lie. Section 25-1315(1) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Section 25-1315(1) is implicated where there are multiple causes of action or multiple parties and the court enters a

final order as to one or more but fewer than all of the causes of action or parties. *Tegra Corp. v. Boeshart*, 311 Neb. 783, 976 N.W.2d 165 (2022). In the absence of an express determination that there is no just reason for delay and upon an express direction for the entry of judgment, orders, however designated, adjudicating fewer than all claims or the rights of fewer than all the parties are not final. *Id*. One may bring an appeal pursuant to § 25-1315(1) only when (1) multiple causes of action or multiple parties are present, (2) the court enters a final order within the meaning of § 25-1902 as to one or more but fewer than all of the causes of action or parties, and (3) the trial court expressly directs the entry of such final order and expressly determines that there is no just reason for delay of an immediate appeal. *Tegra Corp. v. Boeshart, supra*. Absent an entry of judgment under § 25-1315, no appeal will lie unless all claims have been disposed as to all parties in the case. *Tegra Corp. v. Boeshart, supra*.

[5] Because § 25-1315 specifically applies "in an action," we first consider the nature of this case in order to determine the applicability of § 25-1315. Stacy began this case in 2017 by setting forth several causes of action that could be described as tort or contract claims and that would generally be considered part of a civil action under chapter 25 of the Nebraska Revised Statutes. In the operative second amended complaint, Stacy added three new "counts" that she alleged were a trust contest brought under the authority of § 30-3856, which is part of the NUTC. As a judicial proceeding under the NUTC, a trust contest under the authority of § 30-3856 is considered a special proceeding for purposes of § 25-1902. See *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005) (proceeding pursuant to NUTC to remove trustee is special proceeding within meaning of § 25-1902). Therefore, this case as presented by Stacy in the district court combined a special proceeding with a civil action.

[6] In *Mann v. Mann*, 312 Neb. 275, 294, 978 N.W.2d 606, 619-20 (2022), we recognized that under Nebraska statutes,

"what is commonly characterized as a civil action [may be joined] with what is commonly characterized as a special proceeding" and that therefore, "civil cases involving multiple claims for relief are not always amenable to binary classification as either an action or a special proceeding." We therefore reviewed our precedent applying § 25-1315, and we explicitly held that § 25-1315 "can be implicated in civil actions, in special proceedings, and in civil actions joined with special proceedings." *Mann v. Mann*, 312 Neb. at 294, 978 N.W.2d at 620.

To the extent that the special proceeding in this case was brought under the authority of the NUTC, we note that appeals in proceedings under the NUTC are subject to Neb. Rev. Stat. § 30-3821 (Reissue 2016), which provides, "Appellate review under [the NUTC] shall be governed by section 30-1601." Neb. Rev. Stat. § 30-1601(1) (Cum. Supp. 2022) provides in relevant part that in matters arising under the NUTC, "appeals may be taken to the Court of Appeals in the same manner as an appeal from district court to the Court of Appeals." Recently, in *In re Estate of Scaletta*, 312 Neb. 953, 960, 981 N.W.2d 568, 573 (2022), we "read § 30-1601(1) as incorporating the rules of appealability in civil matters, including . . . § 25-1902." Applying the same reasoning by which we previously read § 30-1601(1) as incorporating § 25-1902, we also read § 30-1601(1) as incorporating § 25-1315 where applicable in appeals involving a proceeding under the NUTC.

Because § 25-1315 can be implicated in civil actions joined with special proceedings and, where applicable, to appeals in proceedings under the NUTC, we determine that § 25-1315 is applicable in the present case in which a civil action was joined with a special proceeding under the NUTC. The instant case involves some "claim[s] for relief" and "multiple parties" as understood in § 25-1315. By its language, § 25-1315 applies "[w]hen more than one claim for relief is presented . . . or when multiple parties are involved." This case involves multiple parties, including Stacy and the several defendants

she named, and the order at issue in this appeal purports to dismiss some, but not all, of the named defendants. Because, inter alia, multiple parties are involved, we determine that § 25-1315 applies in this case, and we turn to applying the requirements of § 25-1315 to this case.

*District Court Did Not Make Adequate Specific*
*Findings to Support Certification*
*Under § 25-1315.*

As stated above, the Court of Appeals ordered the parties to address the certification issue in part because it determined that the certification order filed by the district court "merely invoked the language of § 25-1315(1) that there is no just reason for delay, but made no specific findings in support of its § 25-1315(1) determination." We agree that the findings in the district court's order were conclusory and were not adequately specific to support its certification and that they further failed to facilitate appellate review of the certification.

[7] We have stated that "when a trial court concludes entry of judgment under § 25-1315(1) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order." *Rafert v. Meyer*, 298 Neb. 461, 468, 905 N.W.2d 30, 36 (2017). We noted that the district court's order in *Rafert v. Meyer* "merely used the language of the statute and did not explain why certification was appropriate" and stated that "[w]hile the absence of detailed findings by the trial court does not require automatic dismissal, it is difficult to accord deference to a court's decision when there is no reasoning to support it." 298 Neb. at 468, 905 N.W.2d at 36.

Although the district court in this case "expressly [found] that there is no just reason for delay," it did not make more specific findings regarding why certification of a final judgment as to the Ryan Defendants was appropriate. As we noted in *Rafert v. Meyer, supra*, this failure does not require automatic dismissal of this appeal, but we take this opportunity to reiterate the need for more specific findings to facilitate

appellate review, particularly when, as in the present case, the reasons for certification are not obvious from the record. Despite the absence of findings, we review the record to determine whether certification was warranted in this case.

*Certification Pursuant to § 25-1315 in This
Case Was an Abuse of Discretion.*

[8] In determining whether certification is warranted, a trial court must take into account judicial administrative interests as well as the equities involved. *Rafert v. Meyer, supra*. A trial court considering certification of a final judgment under § 25-1315 should weigh factors such as (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the trial court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Rafert v. Meyer, supra*. As a starting point for considering certification of a final judgment, it is appropriate for the trial court to consider whether the claims under review for potential certification are separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals. *Id*.

[9] We have emphasized that certification of a final judgment must be reserved for the "unusual case" in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by the pressing needs of the litigants for an early and separate judgment as to some claims or parties. *TDP Phase One v. Club at the Yard*, 307 Neb. 795, 950 N.W.2d 640 (2020). The

power § 25-1315(1) confers upon the trial judge should be used only in the "infrequent harsh case" as an instrument for the improved administration of justice, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case. *TDP Phase One v. Club at the Yard, supra*. A court should be particularly cautious in certifying as final a judgment on a claim which is not truly distinct from the claims on remaining issues, for even if the certified judgment is inherently final, the facts underlying the claim resulting in that judgment may be intertwined with the remaining issues. *Id*.

In this regard, we warned in *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 813, 733 N.W.2d 877, 888 (2007), that "[i]n a case in which the issues are intertwined, the trial court might wish to reconsider its dismissal of certain claims" and certification thereof prior to creation of a complete fact record developed at trial. We further noted that "[a] complete factual record will also assist in final appellate review and decrease the likelihood of inconsistent decisions," *id*., and we stated that "[w]hen the dismissed and surviving claims are factually and legally overlapping or closely related, fragmentation of the case is to be avoided except in '"unusual and compelling circumstances,"'" *id*. at 813, 733 N.W.2d at 888-89.

Constance generally argues that the settlement agreement and the district court's dismissal order resolved only the tort and contract claims against the Ryan Defendants and that the trust contest challenging the validity of the amendments to the Trust made by Wayne after Eileen's death was not resolved and remained pending. She argues that there was no reason given for why the Ryan Defendants should be dismissed while the trust issues remained pending. In their brief for appellees, the Ryan Defendants argue that the issue of the validity of the trust does not remain pending because the trust contest was dismissed with all the other claims against the Ryan Defendants. The Ryan Defendants generally argue that certification was proper to provide them finality because

the remaining claims relate solely to Constance. We are not persuaded by the Ryan Defendants' arguments.

We note that the content of the district court order approving the settlement agreement and dismissing the Ryan Defendants stated "all claims . . . or other requests for damages, costs, or fees that have been or could have been brought against" the Ryan Defendants in this action were dismissed. This order does not inform us whether the trust was valid. However, we need not resolve whether the settlement agreement and the district court's dismissal order did or could resolve the trust contest, because as discussed below, we determine that certification was not appropriate based on the claims that the parties agree remain.

Although Constance and the Ryan Defendants disagree regarding whether the trust contest remains, they appear to agree that certain "counts," including counts 1 and 6, to the extent directed against Constance, remain. Our review of the record, and in particular the allegations in the second amended complaint, shows that several counts, including counts 1 and 6, were alleged against the "Ryan Children Defendants." Stacy defined the "Ryan Children Defendants" as being Constance, Carol, Timothy, and Steven. Count 1 pertains to alleged civil forgery. Count 6 pertains to an alleged intentional interference with contractual relations. The pleading does not specify what role the various "Ryan Children Defendants," including Constance, played in each of these counts that were leveled at all of them. The record does not permit us to tease out the separate actions of the various "Ryan Children Defendants," and at this point, we must view all their alleged actions as intertwined. Because the remaining claims against Constance are intertwined with the same claims against the other three siblings, Carol, Timothy, and Steven, who are among the Ryan Defendants and the "Ryan Children Defendants," there is no apparent basis in the record before us to determine that the remaining claims alleged against Constance are truly distinct from the same claims against the other three siblings.

As noted above, in *Rafert v. Meyer*, 298 Neb. 461, 470, 905 N.W.2d 30, 37 (2017), we stated an appropriate starting point when considering certification is "to consider whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would ever have to decide the same issues more than once even if there were subsequent appeals." We find this consideration instructive. It is unclear why this case would be considered the "unusual case" in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by the pressing needs of the litigants for an early and separate judgment as to some claims or parties. In this regard, we note that although the Ryan Defendants sought certification, they did not appeal. Because the record shows that the issues in the remaining claims were intertwined with claims that were dismissed and the record does not show that the remaining claims are truly distinct, we conclude that certification was not appropriate and that the district court abused its discretion when it certified a final judgment as to the Ryan Defendants.

An appellate court's jurisdiction to review the merits of an appeal when a final judgment has been certified pursuant to § 25-1315 "depends on whether it was properly certified." See *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 808, 733 N.W.2d 877, 885 (2007). Where § 25-1315(1) "was erroneously applied, there is no final order," *Cerny v. Todco Barricade Co.*, 273 Neb. at 816, 733 N.W.2d at 890, and, therefore, no jurisdiction for an appeal. Where certification is the result of an abuse of discretion, the proper action of an appellate court is to vacate the certification order and dismiss the appeal for lack of jurisdiction. See *Rafert v. Meyer, supra*.

## CONCLUSION

We conclude that the district court abused its discretion in its February 23, 2022, order in which, under § 25-1315, it

certified the February 8 order approving settlement and dismissal of the Ryan Defendants as a final judgment as to the Ryan Defendants. We therefore vacate the court's order certifying a final judgment, and because there is no final judgment, we dismiss the appeal for lack of jurisdiction.

Order vacated, and appeal dismissed.

Stacy, Funke, and Papik, JJ., not participating.